May it please the Court. Good morning. Good morning. I'm here today on behalf of Lieutenant Colonel Christopher Downey, a decorated commander in the United States Army. You will hear challenging today in seeking reversal of the district court opinion in this case as to both the claims brought under the Administrative Procedures Act and under the Constitution. I'd like to begin by discussing the claims brought pursuant to the APA. The decision that was issued by the Army Board of Correction for military records in this case is a quintessential example of an arbitrary and capricious decision. It is completely lacking in the rationale required by 32 CFR 581.3, which requires that when a board denies a petitioner's claim, it must provide the rationale for doing so in writing. That's completely lacking here. There is no rationale. The board wholly failed to address significant non-frivolous claims that Lieutenant Colonel Downey presented. Now, defendants have argued that the board did not need to address Lieutenant Colonel Downey's claims because his claims were frivolous. But importantly, the board never said that his claims were frivolous. They never identified them as such. The board was required to either address his claims on the merits or explain why they didn't need to be addressed. It failed to do so. Moreover, Lieutenant Colonel Downey's claims were not frivolous. This court is well aware of frivolous claims that a claim is only frivolous when it lacks even an arguable basis in law or fact. That's not the case here. This court is also described in McLean v. United States. Examples of frivolous claims are those that are so nutty, delusional, or wholly fanciful as to be simply unbelievable. And that's simply not the case here. The claims that he submitted were not of that type at all. And in reviewing his claims and determining frivolousness, I ask that this court pay special attention to the portions of our brief and our amended complaint where we describe Lieutenant Colonel Downey, his background, his accomplishments, his 26 years of service, which include three wartime deployments, multiple recognitions of his bravery, valor in combat, including a V device for valor in combat, recognizing that his decision making saved lives. And I ask that you pay special attention to that, not just so that you hear our call to justice more keenly, but so that you recognize that this is a serious person bringing serious claims. This is a person who served the White House, served the President of the United States in airlift operations. He's a serious person, and all of his claims are serious. They're not delusional. They're not fanciful. And they deserve to be addressed. It is not for the district court or defendants to fill the holes that have been left by the ABCMR's decision. It cannot provide the rationale that the board failed to provide itself. If the board's decision is to be upheld, it must be only on the basis given by the board itself. Here, the board gave no reason for denying the significant claims that Lieutenant Colonel Downey brought. It didn't even address them. Here, the district court tried to say, in its opinion, that the board should be excused from addressing some of the claims, including his claims having to do with new medical evidence that was acquired after the Article 15 proceedings. The board, or excuse me, the district court found that the reason that the board made the decision that it did was because Lieutenant Colonel Downey's actions were negligent. That when he attempted to lower the camera, he may not have intended to assault the soldier, but that he is responsible for the actions that occurred because they were negligent. You won't find the word negligence in the ABCMR's decision. The ABCMR never addressed negligence. And so the district court now and defendants now cannot supply that reason as a basis for the ABCMR's decision when the ABCMR never provided that itself. The ABCMR must demonstrate in writing why it made the decision that it made, and it must make that connection in writing between the facts it found and the decision it made, and that's wholly absent in this case. Among the evidence that the board failed to address include the elements of assault were not met, the regulations were not filed in this case, were not followed. What element of assault was not met? Well, Lieutenant Colonel Downey argued that the Article 128 specification that he was charged with, it has two factors to it. The first is that some bodily harm occur, and the second is that the bodily harm must occur by unlawful force or violence. So Lieutenant Colonel Downey argued before the ABCMR that the second element had not been met. The first prong you can see. Well, not necessarily. Injury? You don't see that? Well, there was some form of touching, that the soldier was injured, yes. But whether or not, yes, to answer your, yes. It is the second prong of it, that there may have been some slight injury, but it was not caused by unlawful force or violence. And that's what was argued to the ABCMR. But the ABCMR... What aspect was not unlawful? That it was not unlawful. In the law of tort and battery, what makes it unlawful? In other words, it was not consensual. That makes it unlawful, doesn't it? Well, and that's another point that I'd like to address here. This is the military specification, Article 128. I understand. So in that specification, there are situations in which a commander, in this case, Lieutenant Colonel Downey, the commander on the scene, was required to take certain action to protect the reputation of his officers and the good order and discipline of his unit. So the action that he took in simply trying to lower a camera was legitimate and justified. His argument at all time had been not only that he never intended any form of assault, that he did not intend to assault the soldier, but that he did not use unlawful force or violence in accomplishing a reasonable and required task. So your argument is that your client had a right to physically make that person cease and desist what they were doing, which is taking a picture. That he was authorized in the action that he took and that the action that he took was reasonable. But what I want to make clear to this Court was that... So that's a factual finding, right? Before the ABCMR? Well, the ABCMR never addressed it, and that's the point. That Lieutenant Colonel Downey brought this to the ABCMR. Is it your position that they have to address it in the language that you say? Well, they didn't address it at all, Your Honor. Okay. These claims were raised before the ABCMR, and they neglected to even... Their conclusion to not address it? No, no. That would be your argument? Yes. That they have to follow... Not even our opinions do that. I don't know of any body that looks at every... Addresses every single why and wherefore about how they get to a conclusion. Well, they require... That's just not... Well, all right. The Supreme Court requires, Your Honor, and... So how long typically are these opinions? I couldn't answer that I understand your position, but if you two are telling me that under Supreme Court law, it had to be fuller, and I guess 50 pages, that it would be relevant to me if you could tell me what other opinions that they issued were. Well, I couldn't give you a number in terms of an average number of opinion pages. Right. I can tell you that in this situation, the actual discussion page is a mere page. There's only one claim that's even addressed at all, and it's dismissed in four cursory sentences. That's completely insufficient. The majority of this opinion that was issued by the ABCMR is cut and pasted from other sources. There's a recitation of what the regulations are that aren't even case-specific, and in the initial, when they're discussing the evidence before it, you can see the brackets that they didn't even bother to remove. It says advisory opinions, if any. They didn't even bother to remove if any. This is clearly a cut-and-paste job that involved no significant analysis, and it was required to give reasoned decision-making by the Supreme Court, by the regulations, by 32 CFR. There must be a rationale that this Court can measure. It is not for the Court. It is not for defense counsel to provide post-hoc rationalization to explain how the ABCMR could have arrived at the decision that it did. All right. Factually, here, to kind of get back to the elements of the common law, the battery, assault by battery, it's undisputed that it was non-consensual. Do you agree with that? That's undisputed. The soldier that was being addressed did not know that Lieutenant Colonel Downing was approaching him. He was not aware that this was happening. He was not aware. He did not consent to it. Yes, but again, Your Honor, I need to... No, no. I don't want you to... He did not consent. That's undisputed. He was not aware. But they weren't joking and playing and in mutual whatever play. I mean, he did not consent to it, correct? He was taking a photograph. Did not see him. Oh, good. Now, what did your client profit as the military chain of command or anything that allowed him to intervene in what he assumed he was doing? That's taking a picture of someone that might bring some disfavor, bad light on that person. What did you cite as that authority? Well, and again, this is to the ABCMR, not this court to determine... Okay. That's not... So to the ABCMR, as a commander on the scene, he was required to take action, that he was required to uphold the good order and discipline of his unit. He saw other soldiers in his unit and officers that were behaving in a manner that was contradictory and in violation of army regulations that prohibit public displays of affection and that prohibit what the soldier taking the photograph was doing, which was contributing to the violation of the good order and discipline of the unit. So as the commander on the scene, he was required to take action. And what he argued to the ABCMR was that he took the only action that he could take at the time. He's in a crowded room, it needed to be done expeditiously. Also noteworthy that they had just returned from Afghanistan, where another incident had occurred that involved a soldier taking videos of female officers showering. So this was fresh on Lieutenant Colonel Downey's mind, the harm that could be caused by this. That was deplorable, deplorable conduct, clearly. But here, you said it's the only thing he must have been able to say to the two persons he thought was engaging in inappropriate behavior. He said, I want you to leave right now. As to the soldier or a... The soldiers who he believed were engaged in inappropriate conduct on the dance floor. He did address them, yes. Did he tell them to leave? Did he say, you must leave now? No, he just told them to alter their conduct. But that's not the only thing he could have done there. Since you said he had the obligation as a commander to address the disorderly situation. And the disorderly situation was, as you, I'm using your words, two people engaged in conduct that may have brought bad light on themselves and the Army, and another person attempting to photograph that bad conduct. So clearly if he could go and touch someone with a camera and stop that, he certainly in the rehearsals could have said, I want you two to leave now. Would you agree with that? Well, no. Why not? First of all, and I must say this first, is that the ABCMR didn't consider any of this. And that's what's truly at issue in the APA claims. But wouldn't it be your burden if once you establish that it's non-consensual, that that's what you used as an affirmative defense? No, all we need to show is that it's not a frivolous claim. That the ABCMR was required to address it. Now the fact that, and I see that my time is up. May I finish? Yes. All that we are required to show is that the claims were not frivolous. So the fact that there is an arguable basis that we can engage in this dialogue, that it's not wholly fanciful, that's what's important for the APA claim. That the ABCMR needed to address this claim, needed to say what you're saying now, if that was the ABCMR's prerogative, that you had other options to address this. Now, Lieutenant Colonel Downey would counter that he acted appropriately in the situation and that had the full circumstances been considered, the amount of time involved in addressing the situation, the noise, the background, and in trying to solve it for the good order of discipline of the unit and for the benefit of all the parties involved, that he did the best that he could in the circumstances. But it was for the ABCMR to address that claim because it's not frivolous. And I'll reserve the rest of my time. Thank you. Counsel, Ms. Conkley? Good morning. Thank you. May it please the Court. Your Honors, I'd like to start this morning with the threshold question here, which is the standard of review that applies to Claims 1 and 2 because I think it's very important to keep that framing in mind. And the task before the District Court here and also before the panel is not to reweigh the evidence that Major General Milley considered at the Article 15 or in any way to conduct a de novo review and determine what this Court might have done in the first instance if it were presiding over that administrative proceeding. Rather, the law is very clear that the Secretary has delegated the authority to correct an error or an injustice when he, quote, considers it necessary. There's an extra layer of deference built into that delegation. The courts have also been very uniformly clear in noting that additional deference applies in this situation for an institutional reason as well, and that is that the court should not turn into a super-correctional board that provides a forum for every soldier dissatisfied with a personnel decision because that would ultimately have the effect of destabilizing the military and taking the court afield from its areas of institutional competence. So the narrow question that is before the Court here is whether the ABCMR decision was supported by substantial record evidence and whether the path of its reasoning in the decision may reasonably be discerned. I think, though, that what I gather their essential, indeed their only claim is, is the ABC, that they didn't do anything. It just is a non-decision. That is their contention, and we disagree with that position. It's an eight-page, single-space decision. It discusses in, I would characterize as considerable detail, the events on the night of the ball in question, the investigation that followed, the Article 15 hearing, the relevant regulatory framework that applies to these types of proceedings. It discusses in some detail the extensive evidence that the plaintiff and his counsel submitted. It discusses all of the arguments that he set forth. It makes clear that it read the application carefully and understood those arguments, and then at the end it reached a series of conclusions that implicitly addressed those arguments, and to the extent it didn't, I think it's fair to read into that opinion that they deemed those arguments frivolous, which the district court agreed was an appropriate characterization of many of these arguments because they have no reasonable chance of success on the merits. They simply do not. So you would say that frivolous does not require anyone to think that the lieutenant colonel is a frivolous person. No. Or not serious, or didn't have a good war record. No. And hasn't done great things for the country. No, and our government has never disputed that he has a very honorable- So what does frivolous mean? The definition of frivolous is that there- In this context. In this context, frivolous means that there's no reasonable chance of success on the merits or no arguable basis in fact or in law. We would submit that either or both of those standards apply to Lieutenant Colonel Downey's arguments here, and to address some of those arguments, specifically the one about the accident defense and whether or not unlawful force was used here. What about the accident defense do you find to be frivolous? Well, the accident defense, it does not apply when there's negligence. So when you take a deliberate action and it results in a foreseeable injury, the accident defense does not apply, and pushing a camera towards someone's face, quite clearly the foreseeable consequences of that are chargeable to- You said actually it doesn't apply when there's negligence. Mm-hmm, and that's in the UCMJ. That's in Article 128. Most accidents involve negligence, doesn't it? The UCMJ is very clear that where there's culpable negligence, the accident defense does not apply.  But the colonel is saying it was not culpable. What I was trying to do was stop someone from taking a photograph. And Article- He had no intention to injure, or that way, really, and we know the law in terms of something that's connected to you that becomes you, but my intent was just to grab a camera or cover a camera. Where is that? It's frivolous to say that that's no culpability. I thought your argument was that this act was intentional. Mm-hmm. He's trying to push the camera away. If he'd fallen into the other officer, that would be an accident. He wouldn't have intended the same thing. There would have been a huge crowd, and you bumped into him and had the same result. Yes. But there wouldn't have been intent. That's exactly right. And Article 128 of the UCMJ specifically says, specific intent to inflict bodily harm is not required. I can find the page site. It's in the record. That's a different thing, though. I agree with Judge March. But even tripping into someone may involve negligence. You weren't watching where you were going, and you fell into someone. But that still could be negligence. In this case, Lieutenant Colonel Downey, I believe that is undisputed, moved towards Specialist Reuter and, with his hands, made a motion to push the camera towards his face. That was a deliberate, intentional action that he took, the foreseeable consequence of which was that the camera struck Specialist Reuter in the face. That's true. But that doesn't – why does that mean that's frivolous, though? Because, do you agree intent is an element? Do you agree? Specific intent to inflict bodily harm is not an intent. The assault is defined by the UCMJ. And further, this was wrapped in – So this has no intent. No intent to inflict bodily harm. No intent to inflict bodily harm is required. The intent to take the action in question, to move his arm towards the camera and push it towards Specialist Reuter's face, that's the intent. If he had tripped, he would not have intended for his body to fall into Specialist Reuter's. If he had tripped the other man, if one officer trips the other, that's intent. That is intentional. If – And bodily injury results, yeah. Are you suggesting – I'm sorry, just to make clear, I understand your hypothetical. Are you suggesting that Lieutenant Colonel Downey would be the person doing the tripping or being the one who was tripped? Yeah, if he had tripped somebody. If he had tripped someone else so that that person, the other person, would fall? Yeah. Sure. But tripping himself, just because the room is – because he causes it because of being pushed in, you know, some cocktail parties, perhaps not in the military, but some places in life, there's such big crowds that you can push into somebody and it could cause damage. Right, but there's no – But that would be an accident. Yes, but – You wouldn't have had – the person who was doing the tripping wouldn't have had any intent to do so. Right? Yes. But here we have a situation in which Lieutenant Colonel Downey deliberately pushed a camera towards Specialist Reuter's face. And the other reason why this line of argumentation is frivolous is – goes to the unlawful force element that you discussed earlier. And, again, the UCMJ in Article 128 spells out quite expressly that force is not lawful if it is more than the situation required. And as Lieutenant Colonel Downey himself, as it pains to point out, he was the commanding officer at this ball. A direct order from him to Specialist Reuter or anyone else would have to have been followed. All he needed to do was say, put the camera down. Likewise, to the extent that he's expressed that his concern here was that these – that pictures were being taken that he feared might be uploaded onto the Internet, there is no argument or allegation that that could have happened instantaneously. This was not an emergency situation requiring some sort of split-second intervention. There would have been time in between issuing an order, even if it took some amount of effort to yell over the noise to prevent the consequence that he feared. Is that the finding in the record, what you said, or is that your argument? Is that the – no, the ABCMR doesn't specify this. It doesn't say anything, really, does it?  What's the finding? What is the finding? The finding from the board is that – Not a conclusion, the finding. The findings. What finding of fact? Then that leads to conclusions of law. The evidence of record confirms the applicant violated the UCMJ while serving as a lieutenant colonel in a leadership position for unlawfully striking a soldier on his face with a camera, which he pushed into his face. That was the finding. We're talking about non-judicial punishment. We're not talking about a court-martial. Yes, that's exactly right. Non-judicial punishment is where the military aptly agrees not to proceed by court-martial. It is non-judicial, correct? It's non-judicial punishment. Non-adversarial. Article 15s occur on fields of battle. They can occur anywhere because you can't stop everything and have a formal trial and a litigant, a soldier, can knowingly and intelligently, a lieutenant colonel in the Army, can waive a court-martial and have non-judicial punishment, correct? Right. And to the extent that Lieutenant Colonel Downey believed he needed the full panoply of procedural protection. He had every right to do so. Yep, exactly. And also, which I think should be emphasized here, that anyone who's ever worn a military uniform understands that they fill out a Form 2627, correct? You may have one page or six or seven pages of finding, but that's an Article 15 form that's used, correct? Exactly. All right. And as the district court noted in its opinion, I would also emphasize to the court that as a commander, Lieutenant Colonel Downey was also someone who was authorized to conduct Article 15 hearings on his subordinate officers. And anybody in a command position of any sort knows full well the parameters of an Article 15, be they a defendant or be exercising command authority. Exactly. And that's why the district court, we would say correctly, found that it was utterly implausible to suggest that his waiver was not knowing, voluntary, and intelligent. And the record the board has, which Judge Gregory is making reference to, is simply whatever the record is from an Article 15 on a Form 2627, correct? Exactly. All right. To move on to another argument that Lieutenant Colonel Downey submits was not frivolous and therefore needed to be expressly addressed by the ABCMR, and that's regarding unlawful command influence. And that derives from Article 37 of the UCMJ, which provides that no person subject to that code may attempt to coerce or by any unauthorized means influence the action of a court martial. And I would refer the court here to pages 41 and 42 of our brief. We cited a body of case law that very consistently stands for the proposition that where, as here, you have generalized statements of senior military leaders who are not directly involved in the court martial in question that are made to the press as opposed to through a chain of command, that this is simply not what is meant by unlawful command influence. So for similar reasons, we would submit that that argument is likewise frivolous and did not need to be expressly addressed by the ABCMR. Lastly, Plaintiffs' Counsel did not expressly address counts three and four of the complaint. I will just briefly submit to the court that we urge affirmance of the district court's disposition as to those claims, but on the alternative grounds set forth in the Schlesinger, the Councilman decision from the Supreme Court, which held that the acts of a court martial within the scope of its jurisdiction and duty cannot be reviewed by the Article III courts. In Branham v. Lake, the D.C. Circuit extended those principles very easily. It saw no reason to make any distinction between a court martial and an Article XV proceeding for purposes of applying that principle. And the district court did note that authority. The district court also noted that the plaintiff made no attempt to distinguish those precedents or explain why they should not apply here. And the district court did not itself distinguish Schlesinger from the Article XV context. So we would respectfully request that this court affirm the district court's disposition as to those counts on those alternative grounds or in the alternative on the basis of the Mendes doctrine for the reasons stated in the district court decision. Are there any further questions from the court? I will cede the rest of my time.  Thank you, Counsel. Thank you. So I think the amount of discussion that's been dedicated to the claim that Lieutenant Colonel Downey made regarding his accident defense shows that this was not frivolous. It is arguable. There is an arguable basis in law and fact that required the ABCMR to address his claim. And Lieutenant Colonel Downey also disputes the pushing the camera into the soldier's face. That's not what occurred. It was simply lowering of a camera. That's what he submitted throughout these entire proceedings. So he simply lowered a camera. It's not foreseeable that simply lowering a camera is going to result in injury. That was the argument that was submitted, and that was the argument that the ABCMR was required to address or explain why it did not need to be addressed. It did neither. It completely ignored it. To what extent is the DA Form 2627 in this case, which is filled out in every nonjudicial punishment involving every military service member of all the branches, to what extent is the DA Form 2627 in this case deficient? Well, the ABCMR never discussed it. It's the ABCMR decision. I understand that, but that's what they look at, correct? The board, the ABCMR, looks at the Form 2627, which is a part of the record in any nonjudicial punishment. That's one of the documents that they look at. And didn't discuss. Not necessarily. There are many documents before the ABCMR. They didn't discuss any of them. But that's the official record under the military regulations is the DA Form 2627. Well, and that we addressed separately as part of the constitutional claims, that the regulations in place here were not followed, and part of the reason is that there's no record of proceeding here. There's just a form with these boxes checked. Because it's nonjudicial punishment. Correct. And that also relates to the constitutional claims in this case. Part of the reason that Lieutenant Colonel Downey decided to proceed with nonjudicial punishment instead of going by way of court martial was based on the advice of counsel. And this has to do with, again, the UCI argument that we presented. That his counsel informed him after a conversation with the command staff judge advocate that this would merely be a commander's conversation and that she should not accompany him because her appearance would make him appear weak. That's a significant claim that the ABCMR failed to address, and it should have. I also need to point out that the ABCMR applied the wrong burden of proof to Lieutenant Colonel Downey's claims. They required him to prove his claims by a clear and convincing standard as opposed to a preponderance of the evidence standard, which is the required standard. The Supreme Court noted in the Allentown case that there's no more violent breach of the standard of – there's no more clear violation in the arbitrary and capricious standard than requiring a soldier – or requiring someone to meet a standard of proof different from the one that's been announced. I also want to point out – The Schlesinger case involved – the Supreme Court's opinion in the Schlesinger case actually involved a formal court martial, correct? Well, the Schlesinger case – and I did want to address this as well. Schlesinger – Williams v. Wilson, which is the First Circuit case that adopted the Fifth Circuit Minday's analysis, which is what should be applied to the constitutional claims in this case, was after Schlesinger. And as was Guerra v. Scruggs, that's a 1991 Fourth Circuit case that mentions Schlesinger and then goes on to address the Minday's framework. This case does not present a basis for reviewing the Williams v. Wilson case or overriding that decision in any way. The binding case is Williams v. Wilson, and it should be applied to this case. Now, the framework was not correctly applied in this case in that Lieutenant Colonel Downey did present valid constitutional arguments and the violation of military regulations that occurred here. And his claims should have been addressed on their merits rather than being dismissed on a 12v6 motion. Back to the ABCMR claims, though, the claims under the APA. It's clear that an agency's failure to respond meaningfully to objections raised by a party renders its decision arbitrary and capricious. So the fact that the board never addressed his arguments requires reversal. The board can't simply rely on the fact that here's our ultimate conclusion, here's a list of facts that we've been provided, but there's no reasoning in between. That's a violation of the arbitrary and capricious standard and requires remand in this case. Nothing that's been submitted by defendants in this case goes to show that there's no arguable basis in law or fact, which is what they need to show, that all of Lieutenant Colonel Downey's claims were, in fact, frivolous. I see that my time is almost up, and I do want to make the point here that Lieutenant Colonel Downey is someone that's dedicated 26 years of his life to serving this country, to defending our constitutional rights, and he's entitled to have his constitutional rights protected and addressed, particularly as to the APA claims and the board who exists for the very purpose of correcting error and injustice in the records of our military men and women. They completely failed in their duty here and should be required to adequately address and analyze the significant claims that Lieutenant Colonel Downey brought, including that Army regulations were not followed to his detriment, that critical evidence was not considered, and that unlawful command influence did unfairly prejudice him in this case. Again, I think the fact that the ABCMR applied the wrong standard of proof is enough on that ground alone to reverse the decision. If the Court doesn't have any further questions, we ask that you reverse the decision of the District Court.  Thank you. We're going to ask the Clerk to adjourn the Court, sign and die, and then come down and give counsel. This Honorable Court stands adjourned, sign and die. God save the United States and this Honorable Court.
judges: Roger L. Gregory, Diana Gribbon Motz, Richard D. Bennett